UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

CHANA TAUB,                                             Chapter 11

            Debtor.                                     Case No. 08-44210-ess
------------------------------------------------------------------x
CHANA TAUB,

            Plaintiff,

      -against-                                         Adv. Pro. No. 08-1170-ess

SIMON TAUB,

            Defendant.
------------------------------------------------------------------x


**MEMORANDUM DECISION ON MOTION TO RESTRAIN, MOTION TO COMPEL,
<u>AND ORDER TO SHOW CAUSE</u>**


Appearances:

Chana Taub, pro se                          David Carlebach, Esq.
                                            Law Offices of David Carlebach, Esq.
                                            40 Exchange Place, Suite 1306
                                            New York, NY 10005
                                                *Proposed Attorney for Debtor*

David Mark, Esq.                            Jacqueline Frome, Esq.
Kasowitz, Benson, Torres & Friedman LLP     Office of the United States Trustee
1633 Broadway                               271 Cadman Plaza East, Suite 4529
New York, NY 10019                          Brooklyn, NY 11201
  *Attorney for Pnina Kaufman*                *Office of the United States Trustee*

Rosemarie Matera, Esq.                      Leo Fox, Esq.
Kurtzman Matera PC                          Law Offices of Leo Fox
664 Chestnut Ridge Road                     630 Third Avenue
Spring Valley, NY 10977                     New York, NY 10017
  *Attorney for Esther Newhouse*              *Attorney for Simon Taub*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are three matters that concern the administration of the estate of the

Debtor and debtor-in-possession, Chana Taub.

The Court considers the Debtor's Motion to Restrain filed in the adversary proceeding

*Taub v. Taub*, which seeks the entry of an order restraining her estranged husband Simon Taub

from collecting rental income from certain properties titled in her name, and directing Mr. Taub

to account for rental income he collected and to pay certain administrative expenses and other

debts on behalf of and owed to her estate.

The Court also considers the Motion to Compel of Pnina Kaufman, who is Mr. Taub's

sister and the representative of their father, Moshe Taub, which seeks the entry of an order

compelling the Debtor to pay administrative expenses relating to real property titled in the

Debtor's name at 1259 52nd Street, Brooklyn (the "52nd Street Property").

And the Court considers whether the best interests of creditors and the estate will be

served by the appointment of a trustee under 11 U.S.C. § 1104(a)(2) or 11 U.S.C. § 1104(a)(3).

This question arises from the Court's Order to Show Cause, issued on January 21, 2010 (the

"OSC"), which directed the parties to show cause why the Court should not order the

appointment of a trustee to perform the duties set forth in 11 U.S.C. § 1106, including the

operation of the business of the Debtor.

These matters require the Court to take stock of the long and unproductive history of this

bankruptcy case, which has been marked from the outset by acrimony, contentiousness, distrust,

and the Debtor's failure to make any progress over twenty-one months toward the proposal and

confirmation of a plan of reorganization.  The motions seek orders to direct the parties to comply

with the plain terms of the Bankruptcy Code, and the OSC contemplates the replacement of the

Debtor with a trustee to manage the affairs of the estate free from the personal conflicts and hostilities that have hindered this case to this point.  In the usual case, such relief would not be warranted.  Zealous and professional advocacy of positions taken in good faith ought to advance the prospects for a successful reorganization.  But this case shows that when zeal and good faith are swallowed up by animosity and recrimination, progress toward reorganization comes to a halt.  And in this unusual situation, it is necessary to issue orders directing the enforcement of the Bankruptcy Code's terms and the appointment of a trustee.

## Jurisdiction

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334(b), 157(b)(1), and 157(b)(2), and the Eastern District of New York standing order of reference dated August 28, 1986.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Procedural History

### *Background*

On July 1, 2008, the Debtor commenced this Chapter 11 bankruptcy case by filing, *pro se*, a voluntary petition for relief.  She continues to operate and manage her estate as a debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

### *Property of the Estate*

The Debtor claims an interest in seven real properties and the rental income that they generate.  Her claimed interest in three of those properties (the "Grand Avenue Properties") is an equitable interest that arises from an equitable distribution claim she has asserted in a divorce proceeding against Mr. Taub, presently pending in Supreme Court, Kings County (the "Second

2

Divorce Action").  *See In re Taub*, 413 B.R. 55, 58-60 (Bankr. E.D.N.Y. 2009) (reviewing the

Debtor's first and second actions to divorce Mr. Taub).  In Memorandum Decisions dated

August 14, 2009, this Court vacated the automatic stay to permit the Debtor and Mr. Taub to

proceed to entry of judgment on all issues in the Second Divorce Action, including equitable

distribution, *Taub*, 413 B.R. at 68, and concluded that neither the Debtor nor her bankruptcy

estate has a legal or equitable interest in the Grand Avenue Properties because an equitable

distribution award has not yet been entered,[1] *Taub v. Taub (In re Taub)*, 413 B.R. 81, 91 (Bankr.

E.D.N.Y. 2009).  As a result, the Debtor's estate has no interest in the Grand Avenue Properties,

although this Court retains the power to enforce any equitable distribution award that the Debtor

may receive.  *Taub*, 413 at 68.

      The Debtor has a legal interest in the remaining four properties (the "Titled Properties").[2]

Three of these properties – the 52nd Street Property, 4819 14th Avenue, Brooklyn (the "14th

Avenue Property"), and 1405 49th Street, Brooklyn (the "49th Street Property") – are titled

solely in her name.  The Debtor and Mr. Taub hold joint interests as tenants by the entirety in the

fourth property, a vacation home located at 85 Forshay Road, Monsey, New York (the "Forshay

Road Property").  In a third Memorandum Decision dated August 14, 2009, this Court declined

to abstain from deciding the claims concerning the Titled Properties stated in the adversary

---

      [1]  On December 11, 2009, the Court denied the Debtor's motion to reconsider its decision
to lift the automatic stay.  *In re Taub*, 421 B.R. 37 (Bankr. E.D.N.Y. 2009).  The Debtor
appealed that denial to the District Court, and that appeal is pending.

      [2]  It is undisputed that each of the Titled Properties was acquired during the Debtor's
marriage to Mr. Taub and before the divorce proceedings were commenced.  It is likewise
undisputed that the 49th Street Property was placed in the Debtor's name in 1993, the 52nd
Street and 14th Avenue Properties were placed in the Debtor's name in 1997, and the Debtor's
joint interest in the Forshay Road Property was created in 1998.

proceeding *Taub v. Taub*, and concluded that the "Debtor [possesses] a legal interest in [the Titled Properties], and that interest became property of her Chapter 11 bankruptcy estate under Bankruptcy Code Section 541 when the case was commenced." *Taub v. Taub (In re Taub)*, 413 B.R. 69, 77 (Bankr. E.D.N.Y. 2009). This, in turn, "gave the Debtor a legal interest in the rents and proceeds from these properties, and that interest too became property of her Chapter 11 bankruptcy estate when the case was commenced." *Id.*

The Debtor also claims that Mr. Taub owes her several debts, and identifies these in her monthly operating reports (the "MORs"). For example, in the February 2010 MOR the Debtor asserts that Mr. Taub owes her $129,000 in post-petition rental income that he wrongfully collected from tenants of the Titled Properties. She also claims that Mr. Taub owes her rental arrears of approximately $110,000 for an apartment at the 14th Avenue Property that he has occupied since September 2005. And she claims that Mr. Taub owes her more than $28,750 in unpaid court-ordered monthly support.

### *Status of the Estate*

The 52nd Street Property, the 14th Avenue Property, and the Forshay Road Property are investment properties that generate monthly rental income.[3] The 49th Street Property is the Debtor's marital home and residence and does not generate rental income. The 14th Avenue Property, the Forshay Road Property, and the 49th Street Property each secures a mortgage.[4]

---

[3] In the Motion to Restrain, the Debtor asserts that the 14th Avenue and 52nd Street Properties should generate monthly rental income of $5,000 and the Forshay Road Property should generate monthly rental income of $1,850.

[4] According to Claims 2, 9, and 10, the 14th Avenue Property secures a mortgage with an outstanding principal balance exceeding $147,000, the 49th Street Property secures a mortgage with an outstanding principal balance exceeding $740,000, and the Forshay Road Property

These mortgages call for monthly payments of approximately $11,000, which is some $800 less than the monthly rental income that the Debtor states she should be able to collect from the Titled Properties.[5]

But since the petition date, the Debtor has not made these mortgage payments or paid other administrative expenses for the Titled Properties.[6]  As a result, the estate's mortgage arrears with respect to the Titled Properties have increased by more than $11,000 for each month that this case has been pending.  For example, the February 2010 MOR indicates that the 49th Street Property has accumulated post-petition mortgage arrears of nearly $220,000.[7]  The 14th Avenue Property has accumulated post-petition mortgage arrears of nearly $59,000.  And the Forshay Road Property has accumulated post-petition mortgage arrears of more than $58,600.

Other unpaid post-petition expenses have accrued as well.  At a January 20, 2010, hearing, the Debtor acknowledged that she has not paid quarterly real estate taxes due on the 52nd Street Property.  The Debtor's sister, Esther Newhouse, now has a claim for more than $588,000 arising from loans to the Debtor for living expenses and legal fees and expenses associated with proceedings in the bankruptcy court and elsewhere.  The Debtor has not

---

secures a mortgage with an outstanding principal balance exceeding $290,000.

[5]  The mortgages on the 49th Street Property, the Forshay Road Property, and the 14th Avenue Property, call for monthly payments of $5,019.19, $2,974.18, and $2,933.97, respectively.

[6]  The Debtor reports a net loss in ten of the 20 MORs filed since the petition date, through the February 2010 MOR.  Since the petition date, the Debtor has reported total income of $93,592.47, and total expenses in the amount of $93,536.47, resulting in a total reported net loss of $56.  Put another way, on average, over the past 20 months, the Debtor has reported total monthly income of approximately $4,677, and total monthly expenses of approximately $4,680.

[7]  In each MOR, the Debtor asserts that the mortgage payments are Mr. Taub's responsibility.

complied with this Court's Order directing the payment of $14,732.20, in professional fees to a Court-appointed mediator.  And on February 26, 2010, this Court approved fees of more than $316,000 for the Debtor's most recent outgoing counsel, the sixth proposed or retained counsel in her case, with payment to be addressed at a later date.

### State Court Proceedings

The New York state courts will resolve certain issues that concern the Debtor's bankruptcy case, including the equitable distribution of marital property in the Second Divorce Action, as well as certain claims made by the Debtor against tenants in the 52nd Street Property that concern the non-payment of rent.  This Court reviewed these proceedings in prior decisions. *See, e.g., Taub*, 413 B.R. at 58-60; *Taub v. Hershkowitz (In re Taub)*, 417 B.R. 186, 194 (Bankr. E.D.N.Y. 2009).  The pendency of these proceedings does not affect this Court's jurisdiction over the Titled Properties, including the power to enter and enforce judgments related to those properties as necessary, and to hear two adversary proceedings that concern these properties.

### Adversary Proceeding 08-1170 - Chana Taub v. Simon Taub (In re Taub)

On July 29, 2008, the Debtor commenced this adversary proceeding to restrain Mr. Taub from collecting or interfering with the collection of rental income from the Titled Properties, and for an accounting and the turnover of rental income that he wrongfully collected.  Two days later, at a hearing on July 31, 2008, the parties consented to the entry of an order providing that the Titled Properties would not be sold, transferred, mortgaged, or otherwise diminished in value by the parties or their agents without prior order of the Court.  That Order remains in effect.  On August 14, 2009, this Court determined not to abstain from hearing the claims raised in this action because they concern property of the estate and are core claims under 28 U.S.C.

§ 157(b)(2)(E).  *Taub*, 413 B.R. at 81.  The Court referred this matter to mediation, but the mediation was not successful.

### *Adversary Proceeding 08-1424 - Pnina Kaufman v. Chana Taub (In re Taub)*

On December 1, 2008, Pnina Kaufman commenced this adversary proceeding to challenge the Debtor's ownership of the 52nd Street Property and to impose a constructive trust on that property in favor of Moshe Taub.[8]  Ms. Kaufman claims that Moshe Taub placed the 52nd Street Property in the Debtor's name in reliance on her promise to reconvey it to him upon request, and that she refuses to do so.  In her answer, the Debtor denies these allegations and asserts several affirmative defenses.  The Court also referred this matter to mediation, but here too, the parties have not reached agreement.

This adversary proceeding has been subject to many delays.  The Court has issued four orders setting discovery deadlines that the parties did not meet.  Numerous letters filed by the parties reflect the acrimony between the parties and show that they have been unable to agree on how, when, or where to proceed with depositions and other discovery.  To date, the parties have not conducted any depositions and discovery deadlines are no longer in place.

### *The Motion to Restrain*

On February 23, 2009, the Debtor brought the Motion to Restrain in the adversary proceeding *Taub v. Taub*.  She seeks orders directing Mr. Taub to pay the debts that he owes to the estate and prohibiting him from interfering with the management of estate property.  On

---

[8]  This Complaint initially sought relief with respect to each of the Titled Properties.  The parties later stipulated to a dismissal with prejudice of the claims concerning the 14th Avenue, 49th Street, and Forshay Road Properties, leaving only the claims concerning the 52nd Street Property.

April 2, 2009, Mr. Taub filed opposition to the Motion to Restrain (the "Taub Opp. to Motion to Restrain").  And on July 16, 2009, and November 30, 2009, the Debtor filed replies in further support of the Motion to Restrain (the "Debtor First Suppl. Br." and the "Debtor Second Suppl. Br.").

The Debtor's management of the Titled Properties, the claims of interference by Mr. Taub and others, and related issues have been addressed in monthly Chapter 11 status conferences, as well as in correspondence, telephone conferences, and so-ordered docket entries. The parties have not been able to resolve these issues, including many that arise from the day-to-day management of the properties, without resort to the Court.  For example, on October 15, 2009, the Court held an emergency hearing on allegations of vandalism and lack of water at the 52nd Street Property.  On October 27, 2009, the Court held an evidentiary hearing and heard testimony of the Debtor and Soya Radin, a new tenant at the 52nd Street Property, after the Debtor declined to file a copy of Ms. Radin's lease.  Ms. Radin testified that Mr. Taub harassed her on several occasions, and described incidents in which she was spat upon and assaulted, and an encounter in which Mr. Taub broke a basement door lock at the 52nd Street Property.  The Debtor also testified that Mr. Taub deliberately caused a bathtub to overflow and damage the 14th Avenue Property, and later clogged the plumbing there, causing her to incur repair costs. On January 20, 2010, and February 25, 2010, the Court heard motions by the Debtor and Mr. Taub on the alleged wrongful diversion by each of the other's mail.

The Court held hearings on the Motion to Restrain at which the parties appeared and were heard on several dates.  On February 25, 2010, the Court heard the parties' final arguments on the Motion to Restrain and reserved decision.

8

### *The Motion to Compel*

On February 17, 2009, Ms. Kaufman filed the Motion to Compel in the Debtor's bankruptcy case. She seeks an order directing the Debtor to pay administrative expenses relating to the 52nd Street Property. On March 23, 2009, the Debtor filed the Affirmation of her then-counsel, Dennis Houdek, Esq., in opposition to the Motion to Compel (the "Debtor Opp. to Motion to Compel"). The Debtor's opposition included a cross-motion for relief against Ms. Kaufman, which she later withdrew without prejudice.

From time to time, Ms. Kaufman and the Debtor filed additional information concerning the status of the estate's administrative expenses. Unpaid administrative expenses for this property, including mortgage, utility, insurance, and real estate tax charges, have also been addressed in monthly Chapter 11 status conferences, as well as in correspondence, telephone conferences, and so-ordered docket entries. Here too, the acrimonious relationships among the parties has required the Court to become involved in routine matters of property management.

The Court held hearings on the Motion to Compel at which the parties appeared and were heard on several dates. On February 25, 2010, the Court heard the parties' final arguments on the Motion to Compel and reserved decision.

### *The Order to Show Cause*

The Court issued the OSC in the Debtor's bankruptcy case on January 21, 2010. In the OSC, the Court directs the Debtor and any other party in interest to show cause why the Court should not order the appointment of a trustee under Bankruptcy Code Section 1104(a)(2) or 1104(a)(3) to perform the duties set forth in Section 1106(a), including the operation of the Debtor's business. In submissions filed on February 11 and 16, 2010, Ms. Kaufman and the

UST support the appointment of a trustee to manage the Debtor's estate (the "Kaufman Br." and the "UST Br.").  In submissions filed on February 11 and 24, 2010, Mr. Taub also supports the appointment of a trustee as an alternative to dismissal of the case (the "Taub Br." and "Taub Affirm.").  And in submissions filed on February 18, 2010, the Debtor and Ms. Newhouse oppose the appointment of a trustee (the "Debtor Opp. to OSC" and the "Newhouse Opp.").

The Court held a hearing on the OSC on February 25, 2010, at which the parties appeared and were heard, the Debtor appeared by her proposed new counsel, and the Court reserved decision.

## Discussion

### *The Motion to Restrain*

The Motion to Restrain requires attention to the parameters of the property of the Debtor's estate under Bankruptcy Code Section 541 and the effect of the automatic stay on that property under Bankruptcy Code Section 362.  The Motion to Restrain also requires analysis of the distinct roles played by this Court and the New York state courts during the pendency of the Second Divorce Action, as well as the Debtor's ability to seek the turnover of estate property under Bankruptcy Code Section 542.

Collection of Rental Income and Interference with Management of Estate Property  The Debtor seeks an order preventing Mr. Taub and his agents from collecting rental income from or interfering with the Debtor's management of the Titled Properties, and authorizing her to manage these properties and to collect the rental income that they generate.  She also describes several instances of alleged damage to the Titled Properties, interference with her attempts to repair the properties, and threats to a tenant.  Mr. Taub denies that he has interfered with,

intimidated, or harassed tenants of the Titled Properties and argues that the Debtor is not entitled to relief because she has not shown that any party has prevented her from collecting the rental income from these properties.

Bankruptcy Code Section 541 provides that the commencement of a Chapter 11 case creates an estate that includes all legal or equitable interests of the debtor in property as of the commencement of the case, wherever located, and by whomever held.  11 U.S.C. § 541(a). "Whether or not a debtor has an interest in property sufficient to bring it within the ambit of 'property of the estate' is determined by state law or other applicable nonbankruptcy law."  *In re Purpura*, 170 B.R. 202, 208 (Bankr. E.D.N.Y. 1994) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).  Property of the estate is determined as of the petition date.  *Marine Midland Bank v. Scarpino (In re Scarpino)*, 113 F.3d 338, 340 (2d Cir. 1997).

Section 236 of New York's Domestic Relations Law (the "DRL") provides that "marital property" includes "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held, except as otherwise provided in agreement . . . ." N.Y. DOM. REL. LAW § 236(B)(1)(c) (McKinney 2009).  Accordingly, the Titled Properties are marital property because each was acquired during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action.  *Id.*

"Under New York law, one spouse's rights in marital property owned by the other are inchoate and do not vest until entry of a judgment of divorce."  *DiGeronimo v. Weissberg (In re DiGeronimo)*, 354 B.R. 625, 637 (Bankr. E.D.N.Y. 2006).  As that court observed:

> The result is that a non-debtor spouse does not have a recognizable *property interest* in a debtor's property until entry of the divorce judgment.  The debtor's

11

> property comes into the bankruptcy estate free from the spouse's inchoate
> interest, and the spouse has a claim to the debtor's property to the same extent as
> does any other unsecured creditor.

*Id.* (emphasis in original). *See Taub*, 413 B.R. at 91 (concluding that the Debtor's inchoate

equitable interest in the Grand Avenue Properties is not property of the estate); *Musso v.

Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006) (finding that at "*no point prior to judgment* does

[section 236] create any contingent or present vested interests, legal or equitable, by virtue of the

parties' martial status or prior to a judgment dissolving their union") (internal quotation

omitted). By contrast, "[i]f the state court enters a divorce decree, makes an equitable

distribution award and transfers title to the nondebtor spouse prior to bankruptcy, the property

will not become property of the debtor spouse's estate." *Schachter v. Lefrak (In re Lefrak)*, 223

B.R. 431, 439 (Bankr. S.D.N.Y. 1998).

The Debtor held title to the 49th Street and 14th Avenue Properties on the petition date.

As a result, her legal interest in these properties is property of her estate, free from Mr. Taub's

inchoate interest in those properties. *Taub*, 413 B.R. at 77. *See Ostashko*, 468 F.3d at 105-06

(finding that "[a] spouse without legal title has no interest in marital property prior to obtaining a

judgment creating such an interest"). Under Section 541(a)(6), the Debtor's estate also includes

the rental income those properties generate. *Taub*, 413 B.R. at 77 (citing 11 U.S.C. § 541(a)(1),

(6)). Until the entry of an equitable distribution award, Mr. Taub's interest in the Titled

Properties and the rental income they generate is "cut off," and may give rise to an unsecured

claim, but not an interest in these properties. *Lefrak*, 223 B.R. at 439 (observing that "if

bankruptcy intervenes prior to the divorce decree, the bankruptcy cuts off the inchoate right in

'marital property,' and leaves the nondebtor spouse with an unsecured claim").

12

The Debtor also held title to the 52nd Street Property on the petition date. That property is the subject of Ms. Kaufman's constructive trust action. The imposition of a constructive trust has a significant effect on estate property. *Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 180 (2d Cir. 2007). This is because under Section 541(d), property held in trust for another is "not property of the bankruptcy estate because the debtor does not have an equitable interest in it." *In re Braniff Int'l Airlines, Inc.*, 164 B.R. 820, 825 (Bankr. E.D.N.Y. 1994) (citing *Begier v. IRS,* 496 U.S. 53, 110 (1990)). But the pendency of that action does not divest the Debtor of her legal interest in the 52nd Street Property, or otherwise remove that interest from the Debtor's estate. That is, under New York law, a "'constructive trust is an equitable remedy, not a legal relationship.'" *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 39 (Bankr. E.D.N.Y. 2007) (quoting *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 436 (S.D.N.Y. 1998)). Until the state court or this Court issues an order to the contrary, the 52nd Street Property and the rental income it generates are also property of the Debtor's estate under Bankruptcy Code Section 541.

On the petition date, the Debtor and Mr. Taub also held joint title as tenants by the entirety in the Forshay Road Property. Under New York law, for so long as the marriage is legally intact, "an entirety interest is composed of a survivorship right, a right to ½ the rents and profits, and a possessory right to an undivided ½ of the fee." *Kirschenbaum v. Feola (In re Feola)*, 22 B.R. 81, 84 n.3 (Bankr. E.D.N.Y. 1982). *See V.R.W., Inc. v. Klein*, 68 N.Y.2d 560, 564 (1986); *Tannis v. Tannis*, 213 N.Y.S.2d 320, 323 (1961); *Cornell v. Golder*, 39 N.Y.S.2d 957, 957 (1943). Where a debtor and a non-debtor possess entirety interests in real property, the bankruptcy estate includes rental income collected by the debtor from that property, as well as

13

the debtor's entitlement to a share of future rental income generated by the property.  *Cmty. Bank, Nat'l Ass'n v. Lyons (In re Lyons)*, 177 B.R. 772, 774 (N.D.N.Y. 1995).  Here too, until the state court or this Court issues an order to the contrary, the Debtor's interest in the Forshay Road Property and her entitlement to collect future rental income that it generates are property of her bankruptcy estate.

Bankruptcy Code Section 362 provides that the filing of a petition triggers an automatic stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]"  11 U.S.C. § 362(a)(3).  The protections of the automatic stay inure to the benefit of both the debtor and creditors.  "One of the principal purposes of the automatic stay is to preserve the property of the debtor's estate for the benefit of all the creditors."  *Official Comm. of Unsec'd Creds. v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991).

"The automatic stay is effective as of the moment of filing of the bankruptcy petition."  *Stucka v. United States (In re Stucka)*, 77 B.R. 777, 782 (Bankr. C.D. Cal. 1987).  Courts in this Circuit have concluded that the automatic stay applies even where "the debtor's claimed interest in property may turn out to be groundless."  *In re Levenstein*, 371 B.R. 45, 47 (Bankr. S.D.N.Y. 2007).  *See Schmidt v. U.S. Marshal Serv. (In re Villarreal)*, 2007 WL 470507, at *2 (Bankr. S.D. Tex. Feb. 8, 2007) (concluding that even "[w]hen property is only *arguably* property of the estate, the automatic stay applies") (emphasis in original).

Here, "[t]he Debtor's real property constitutes property of the estate protected by the automatic stay" even though the Debtor's legal interests may be modified by legal actions presently pending in this Court, the matrimonial court, and elsewhere.  *In re Crawford*, 388 B.R.

506, 517 (Bankr. S.D.N.Y. 2008) (internal quotation omitted). As a result, the automatic stay prevents any party from interfering with or attempting to control property of the estate, and from collecting or interfering with the estate's collection or possession of rental income from that property.

Against this background, the Debtor seeks relief in the form of an order that gives effect to the provisions of Bankruptcy Code Sections 541 and 362. Property of her estate, wherever located and by whomever held, includes the rental income paid by tenants of the Titled Properties. It also includes rental income to be paid by those tenants in the future. The automatic stay protects that property of the estate for the benefit of the Debtor's estate as well as her creditors. The automatic stay similarly prohibits interference with the Debtor's management of estate property, including vandalism and intimidation or harassment of tenants.

In the usual circumstance, an order directing compliance with the plain terms of the Bankruptcy Code would not be required. Rather, compliance is expected, by the debtor and creditors alike. At the same time, it is within both the authority and the discretion of the bankruptcy court to issue "any order . . . that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). *See Schwartz v. Aquatic Dev. Group, Inc (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) (observing that "[t]he equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code") (internal quotation omitted). Difficulties and disputes between the Debtor and Mr. Taub in connection with the management of the Titled Properties have marked the administration of this bankruptcy case since its inception. Based on the entire record, the Court is satisfied that the record warrants the entry of

15

an order directing Mr. Taub and his agents not to interfere with the management of property of the estate.

    <u>Accounting and Turnover of Estate Property</u>  The Debtor also seeks an order directing Mr. Taub to turn over and account for all pre- and post-petition rental income that he allegedly collected from tenants at the Titled Properties.  Mr. Taub responds that he has already accounted for and turned over to the Debtor all of the rental income that he collected prior to his receipt of notice of this bankruptcy filing.  And Mr. Taub notes that by letter dated August 5, 2008, he accounted for the rental income that he collected between 2005 and that date, and the expenses that he paid for the Titled Properties up to that time.

    Bankruptcy Code Section 542 creates a mechanism by which a trustee or debtor-in-possession may seek the turnover of property of the estate that the estate may use, sell, or lease, but which is in the possession, custody, or control of another entity.  11 U.S.C. § 542.  *See In re Mid-Island Hosp.*, 254 B.R. 71, 74 (E.D.N.Y. 2000) ("A turnover proceeding may be brought by the debtor or trustee to recover property of the estate that is being held by another.").  Section 541(a)(6) "expressly applies to rents from property of the estate which were generated from the subject Propert[ies] . . . ."  *Feltman v. Menada, Inc. (In re Suncoast Towers South Assocs.)*, 1999 WL 549678, at *9 (Bankr. S.D. Fla. June 17, 1999) (granting trustee's motion for turnover of delinquent rents to bankruptcy estate).  *See Taub*, 413 B.R. at 77 (Bankr. E.D.N.Y. 2009) (observing that the Debtor's interest in rents became property of her bankruptcy estate when the case was commenced).  "[B]y its terms, section 542(a) requires only that the property be of a value or benefit to the estate that is not 'inconsequential.'"  5 COLLIER ON BANKRUPTCY ¶ 542.02[2] (15th ed. 2010).

16

As described above, by operation of Bankruptcy Code Section 541, the Debtor's bankruptcy estate includes her legal interest in the Titled Properties and the rental income that they produce. Bankruptcy Code Section 542 provides an appropriate tool to recover this income for the benefit of the estate. Based on the entire record, the Court is satisfied that the record warrants the entry of an order directing Mr. Taub to turn over and account to the Debtor's estate for any rent that he has collected from the Titled Properties.

<u>Occupancy of the 14th Avenue Property</u> The Debtor also seeks an order directing Mr. Taub either to vacate the apartment that he occupies in the 14th Avenue Property or to pay fair market rent of $2,000 per month that has accrued since September 2005. The Debtor argues that the state court ordered Mr. Taub "to vacate the second floor apartment . . . or, in the alternative, pay [the Debtor] reasonable market value monthly rental in advance on the first day of each month commencing with July 1, 2007." Debtor's First Suppl. Br. ¶ 3. Mr. Taub acknowledges that he has not paid rent for the apartment that he occupies at the 14th Avenue Property, but states that he "is required to occupy the 14th Avenue property under the rulings of the State Court" because the Debtor has not provided him with sufficient living space at the 49th Street Property. Taub Opp. to Motion to Restrain ¶ 16. Mr. Taub states that he is "prepared to discuss an arrangement" to vacate the 14th Avenue Property in exchange for more space at the 49th Street Property, and argues that the issue "is an appropriate subject to be brought to the attention of the State Supreme Court . . . ." *Id.* And he asserts that the fair market rent for his apartment is between $1,200 and $1,300 per month.

Under New York law, "where a matrimonial action is pending between a husband and wife, then, ordinarily, the matter of the occupancy and possession of the marital home should be

determined by proper proceedings in such action." *Rosenstiel v. Rosenstiel*, 20 A.D.2d 71, 77

(1963). Domestic Relations Law Section 234 governs proceedings concerning the occupancy

and possession of the marital home and provides that in a divorce action:

> [T]he court may (1) determine any question as to the title to property arising
> between the parties, and (2) make such direction, between the parties, concerning
> the possession of property, as in the court's discretion justice requires having
> regard to the circumstances of the case and of the respective parties.

N.Y. DOM. REL. LAW § 234 (McKinney 2009).

On August 14, 2009, this Court vacated the automatic stay to permit the Debtor and Mr.

Taub to proceed to entry of judgment on all issues in their pending divorce action, including

equitable distribution. *Taub*, 413 B.R. at 68. That is, they may seek relief with respect to

occupancy of the marital home and other matters within the scope of the matrimonial court's

jurisdiction. But this Court may still determine whether Mr. Taub, as an occupant of an

apartment in the 14th Avenue Property, has the same obligation as any other individual using

property of a debtor's estate to compensate the estate for the use of that property.

The living arrangements of the Debtor and Mr. Taub have been the subject of

considerable attention in the state court, and the parties cite extensively to these proceedings.

But the record does not show that any order issued by the state court authorizes Mr. Taub to

occupy property of the Debtor's estate without paying rent. Nor does the record show that the

Debtor's actions either require or entitle Mr. Taub to live rent-free in the 14th Avenue Property.

Rather, Mr. Taub's failure to pay rent has deprived the Debtor's estate of income that should

accrue to the benefit of all of her creditors. *Lefrak*, 223 B.R. at 440 (concluding that a nondebtor

spouse's refusal to vacate or pay maintenance on an apartment that was property of the Debtor's

estate granted her "a windfall . . . at the creditors' expense"). Based on the entire record, the

18

Court is satisfied that the record warrants the entry of an order directing Mr. Taub to pay and account to the Debtor's estate for the fair market rent due for his occupancy of an apartment at the 14th Avenue Property and directing Mr. Taub to pay monthly rent to the estate for so long as he occupies the apartment.

       <u>Payment of Pre-Petition Obligations Pursuant to State Court Orders</u>  The Debtor seeks an order directing Mr. Taub to pay certain pre-petition expenses for the Titled Properties.  She argues that the state court has ordered Mr. Taub to make these payments, which include mortgage arrears, real estate taxes, and water board liens for the 49th Street Property, and pre-petition real estate taxes and water and sewer charges for the 52nd Street Property pursuant to a tax lien that arises from a forbearance agreement that bears the Debtor's signature but is, she claims, a forgery (the "Tax Lien").  Mr. Taub argues that "[a]ll of the issues raised in the Motion [to Restrain] are presently before the State Supreme Court . . . and therefore should be submitted for resolution to the State Supreme Court."  Taub Opp. to Motion to Restrain ¶ 8.

       As noted above, this Court has vacated the automatic stay to permit the Debtor and Mr. Taub to proceed to entry of judgment on all issues in their pending divorce action.  *Taub*, 413 B.R. at 68.  Both of these properties are presently the subject of state court litigation.  And that court is the appropriate forum to resolve the questions of whether Mr. Taub has complied with state court orders relating to these properties, and the extent of his responsibility for the expenses for the Titled Properties.  Based on the entire record, the Court is satisfied that the record does not warrant the entry of an order directing Mr. Taub to comply with orders issued by the state court or determining his responsibility for expenses associated with the Titled Properties.

### *The Motion to Compel*

In the Motion to Compel, Ms. Kaufman seeks an order directing the Debtor to pay the

administrative expenses for the 52nd Street Property, including the accrued real estate taxes,

water board charges, electricity and gas bills, and the Tax Lien.  She argues that this relief is

warranted because the Debtor collects the monthly rent from the tenants of that property.

Alternatively, she asks the Court to terminate the Debtor's authority to collect the rent and to

appoint a property manager.  Ms. Kaufman argues that "[a]s a general matter, a debtor in

possession is required to pay the ongoing expenses of administering her estate."  Motion to

Compel ¶ 6.  The Debtor acknowledges that she is responsible for post-petition administrative

expenses for the 52nd Street Property, but maintains that she is not responsible for payments in

connection with the Tax Lien.  She also argues that she has paid and continues to pay all of the

administrative expenses of the 52nd Street Property.  But at the January 20, 2010, hearing on this

motion, the Debtor acknowledged that she was not current on the administrative expenses,

including mortgage and real estate tax payments, for this property, and submissions by Ms.

Kaufman more than a month later suggest that the Debtor remains behind on real estate tax and

utility payments for this property.

As courts have observed, "Chapter 11 clearly implies that a debtor-in-possession has the

authority to pay and must pay debts incurred in the ordinary course of its business whether they

are called expenses of administration or something else."  *In re W. Farmers Assoc.*, 13 B.R. 132,

135 (Bankr. W.D. Wash. 1981).  A debtor-in-position has a "duty to protect and conserve

property in its possession for the benefit of creditors."  *In re Ionosphere Clubs, Inc.*, 113 B.R.

164, 169 (Bankr. S.D.N.Y. 1990).  "'Preserving the estate' . . . should not be interpreted

narrowly. . . . Preservation of the estate may require, for example, outlays for repairs, upkeep, freight, insuring the value of the property and the hiring of custodians by the trustee." 4 COLLIER ON BANKRUPTCY ¶ 503.06[1] (15th ed. 2010).

More generally, there can be no doubt that the Bankruptcy Code imposes upon a debtor-in-possession the duty to conduct the business of the estate in a manner that, at a minimum, preserves the value of the estate. A debtor-in-possession should be permitted to operate within the broad parameters of sound business judgment, and the debtor-in-possession's performance should not be assessed solely with the benefit of hindsight. At the same time, the Bankruptcy Code makes plain that "continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" are grounds to conclude that a debtor-in-possession has failed in its stewardship. 11 U.S.C. § 1112(b)(4)(A) (describing cause for mandatory conversion or dismissal of Chapter 11 case). *See* 11 U.S.C. § 1104(a)(3) (stating that a trustee shall be appointed in lieu of conversion or dismissal if "the court determines that the appointment of a trustee . . . is in the best interests of creditors and the estate"). And "if there are insufficient assets to cover all administration expenses in a chapter 11 case, typically expenses should not be incurred in the ordinary course of operating the business, but rather the case should be converted to a liquidation proceeding under chapter 7." *In re Chips 'N Twigs, Inc.*, 58 B.R. 109, 112 (Bankr. E.D. Pa. 1986).

In this context, Ms. Kaufman seeks relief in the form of an order that enforces the duty of a debtor-in-possession to conduct the estate's business in a manner that avoids continuing loss to or diminution of the estate. Here again, in the usual case, an order directing compliance with these obligations would not be required, because compliance is expected. But this Court has the

authority and the discretion to issue an order directing such compliance where "necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Unpaid expenses and mounting losses have marked the Debtor's management of the estate from its inception in July 2008, and they show no sign of abating.  Based on the entire record, the Court is satisfied that the record warrants the entry of an order directing that the Debtor's estate must pay the actual and necessary costs and expenses of preserving and maintaining the 52nd Street Property.

### *The Order to Show Cause*

Bankruptcy Code Section 1104 provides three distinct avenues to the appointment of a trustee to replace a debtor-in-possession and manage a Chapter 11 debtor's estate.  Two of these paths, set forth in Sections 1104(a)(2) and 1104(a)(3), are considered here.  Bankruptcy Code Section 1104(a)(2) provides that a trustee shall be appointed "if such appointment is in the interests of creditors . . . and other interests of the estate, without regard to . . . the amount of assets or liabilities of the debtor[,]" and Section 1104(a)(3) provides that a trustee shall be appointed "if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee . . . is in the best interests of creditors and the estate."  11 U.S.C. § 1104(a)(2)-(3).

The appointment of a trustee is an unusual remedy and "'[t]he standard for § 1104 appointment is very high . . . .'"  *Adams v. Marwil (In re Bayou Group, LLC),* 564 F.3d 541, 546 (2d Cir. 2009) (quoting *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC),* 423 F.3d 166, 176 (2d Cir. 2005)).  The Court "must bear in mind that the appointment of a trustee 'may impose a substantial financial burden on a hard pressed debtor

seeking relief under the Bankruptcy Code,' by incurring the expenditure of 'substantial administrative expenses' caused by further delay in the bankruptcy proceedings." *Bayou*, 564 F.3d at 546-47 (quoting *Midlantic Nat'l Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.)*, 4 B.R. 635, 644 (Bankr. E.D.N.Y. 1980)).  The decision whether to appoint a trustee is committed to the sound discretion of the bankruptcy court, and "[is] reviewed under an abuse of discretion standard."  *In re Adelphia Commc'ns Corp.,* 342 B.R. 122, 126 (S.D.N.Y. 2006).  Many courts, including courts in this Circuit, have observed that the appointment of a trustee must be supported by clear and convincing evidence.[9]  *Bayou*, 564 F.3d at 546.  *See In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 656 (Bankr. S.D.N.Y. 2006); *Ionosphere,* 113 B.R. at 168.

The United States Trustee supports the appointment of a trustee for several reasons, including the Debtor's failure to meet her post-petition mortgage obligations and other administrative expenses, and her failure to propose a Chapter 11 plan or disclosure statement. She argues that the appointment of a trustee is in "the best interests of the estate" and observes:

> The Debtor cannot properly manage her properties for the benefit of the estate largely due to the acrimony between the Debtor and [Mr. Taub].  A chapter 11 trustee would not only be disinterested but he or she would also be able to deal with the parties impartially to achieve the goals of chapter 11 more efficiently and effectively.

UST Br. at 6, 7.  In her written submissions, she also supports the appointment of a trustee under Section 1104(a)(3) because cause to convert the case to one under Chapter 7 exists due to the

---

[9]  Consistent with the widespread deference afforded to bankruptcy courts under Section 1104(a)(2), at least one court has concluded that the standard of evidence in support of appointing a trustee is a preponderance of the evidence.  *Tradex Corp. v. Morse*, 339 B.R. 823, 829 (D. Mass. 2006).  This Court assumes, without deciding, that the applicable standard is that followed by the majority of the reported decisions, clear and convincing evidence.

substantial continuing loss or diminution of the estate, and the absence of a reasonable likelihood of rehabilitation.

Mr. Taub supports the appointment of a trustee as an alternative to dismissal of the case. He argues that the estate is being diminished by the increasing unpaid debts and administrative expenses. And he notes that even a trustee may not be able to move this case toward the confirmation of a Chapter 11 plan, because the income generated by the properties is "insufficient to permit the payment of a management company to manage all three properties, and pay essential items, such as utilities, taxes and the other operating expenses." Taub Br. ¶ 5.

Ms. Kaufman also supports the appointment of a trustee. She observes that the Debtor has not met her administrative obligations with respect to the 52nd Street Property since the outset of this bankruptcy case. More generally, she argues:

> The record of this case is replete with evidence of the Debtor's inability to operate the property of the estate and of the continuing loss [to] and diminution of the estate. Moreover, the Debtor has made absolutely no progress with regard to the promulgation of a plan of reorganization in the 20 months since the filing of this chapter 11 case.

Kaufman Br. ¶ 1. Ms. Kaufman also notes that a trustee should take up "as his or her first order of business [the determination of] whether the estate is capable of meeting its administrative obligations and whether a chapter 11 plan may [be] confirmed in this case within a reasonable period of time." Kaufman Br. ¶ 4.

The Debtor opposes the appointment of a trustee. She argues that a trustee cannot manage the properties as well as she can, and that the relief that she seeks against Mr. Taub in the Motion to Restrain will improve the estate's prospects for a successful reorganization. She notes that Mr. Taub owes her estate significant sums, as reported in the MORs, and argues that the income

24

generated by the Titled Properties should be sufficient to pay the estate's debts. The Debtor also states that her estate cannot pay the administrative expenses identified in the OSC until the Motion to Restrain is granted, and she faults the Court for adjourning the Motion to Restrain and her other requests for relief. Finally, the Debtor proposes that as an alternative to the appointment of a trustee, she should be permitted to borrow funds secured by a mortgage on the 52nd Street Property to pay the expenses of the Titled Properties.

Ms. Newhouse argues that the record does not satisfy the "'very high'" standard under Bankruptcy Code Section 1104 to appoint a trustee, and that the "appointment of a trustee in the instant case is clearly unwarranted." Newhouse Opp. ¶ 20. She states that a trustee will not change the practical realities of the case and suggests that the relief sought by the Debtor in the Motion to Restrain provides a "far less intrusive and far less costly" means of reorganizing the Debtor's estate. Newhouse Opp. ¶ 22.

### The Appointment of a Trustee Under Section 1104(a)(2)

Bankruptcy Code Section 1104(a)(2) provides that after notice and a hearing, a court "shall" order the appointment of a trustee "if such appointment is in the interests of creditors . . . and other interests of the estate, without regard to . . . the amount of assets or liabilities of the debtor . . . ." 11 U.S.C. § 1104(a)(2). Courts construing this subsection "eschew rigid absolutes and look to the practical realities and necessities" of the record to determine whether the appointment of a trustee is in the best interests of the estate. *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006). That is, the standard for appointment under Section 1104(a)(2) is a flexible one that suggests a balancing of costs and benefits in determining whether the appointment of a trustee is appropriate. *Ionosphere,* 113 B.R. at 168. As one court observed,

25

"the factors constituting a basis for appointing a trustee under § 1104(a)(2) are amorphous, diverse, and necessarily involve a great deal of judicial discretion." *In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 527 n.11 (Bankr. E.D.N.Y. 1989).

Factors to be weighed in determining whether to direct the appointment of a trustee include the debtor's past and present performance and prospects for rehabilitation, the confidence of the business community and creditors in the debtor's management, and the benefits to be derived from the appointment of a trustee balanced against the costs of appointment. *In re Ridgemour Meyer Props., LLC,* 413 B.R. 101, 112 (Bankr. S.D.N.Y. 2008). *See V. Savino Oil*, 99 B.R. at 525 (stating that Section 1104(a)(2) may require "a cost-benefit analysis, to determine whether the appointment of a reorganization trustee would be in the interests of creditors . . . and other interests of the estate").

Courts have appointed trustees pursuant to Section 1104(a)(2) when there is "[a] high level of acrimony between a debtor's management and its creditors . . . , particularly if that acrimony is hampering the prospects of rehabilitation." Clifford J. White III & Walter W. Theus, Jr., *Chapter 11 Trustees and Examiners After BAPCPA*, 80 Am. Bankr. L.J. 289, 300-01 (Summer 2006) [hereinafter *Chapter 11 Trustees*]. In fact, "acrimony between the creditors and the debtor's management, standing alone, has been found to be a basis to appoint a chapter 11 trustee under § 1104(a)(2)." *In re Eurospark Indus., Inc.*, 2010 WL 779551, at *7 (Bankr. E.D.N.Y. Mar. 3, 2010). A "court may find cause to appoint a trustee for 'acrimony' only on a case-by-case basis, when the inherent conflicts extend beyond the healthy conflicts that always exist between debtor and creditor, [or] when the parties 'begin working at cross-purposes.'" *In re Marvel Entm't Group*, 140 F.3d 463, 473-74 (3d Cir. 1998) (quoting *In re Cajun Elec. Power Co-*

26

*op., Inc.*, 74 F.3d 599, 600 (5th Cir. 1996)). *See Petit v. New England Mortgage Serv. Inc. (In re Petit)*, 182 B.R. 64, 70 (D. Me. 1995) (affirming appointment of trustee where antagonism and animosity "reached a particular intensity [] which is complicating efforts to 'reorganize' the Debtor[, and] appointment of a trustee may be the only way that the bankruptcy court can ensure that reorganization will proceed").

A trustee should also be appointed to replace a debtor-in-possession who "suffer[s] from material conflicts of interest . . . ." *Ridgemour*, 413 B.R. at 113. A conflict of interest can arise where a debtor has multiple roles that give rise to conflicting duties and obligations. *See, e.g., In re Suncruz Casinos, LLC*, 298 B.R. 821, 831 (Bankr. S.D. Fla. 2003) (finding conflict of interest where creditor and debtor-in-possession held landlord-tenant relationship). And "[a] court may find appointment of a trustee is warranted when a debtor's failure to move a case forward in the direction of a successful reorganization has caused the creditors to lose confidence that reorganization is, in fact, possible with current management at the helm." *In re Sundale, Ltd.*, 400 B.R. 890, 909-10 (Bankr. S.D. Fla. 2009). *See Ionosphere*, 113 B.R. at 168 (identifying loss of confidence in debtor's management as cause for appointment of trustee under Section 1104(a)(2)); *Marvel*, 140 F.3d at 474 (deep conflict and animosity between debtor and lenders led to "intense and high-stakes bickering[,]" which caused lack of confidence in debtor). As a leading commentator observes, "[such] a loss of confidence may result from a simple inability to work with the current managers, which could interfere with the operation of the business and the negotiation of a reorganization plan." 7 COLLIER ON BANKRUPTCY ¶ 1104.02[d][iii] (15th ed. 2010).

The record of the Debtor's bankruptcy case shows that many issues have arisen that cast

doubt on the Debtor's ability to manage the estate effectively and to move it toward a prompt and effective reorganization. These include the Debtor's retention or proposed retention of at least eight counsel over the twenty-one months that this case has been pending, the Debtor's failure to meet her administrative obligations including to pay significant post-petition expenses to maintain the Titled Properties, and her failure to comply with court orders. More generally, the record shows that nearly every aspect of the Debtor's management of the estate has been marked by conflict, acrimony, and animosity, and the absence of meaningful progress toward the proposal and confirmation of a plan of reorganization. Much of this is apparent from a simple review of the 517 docket entries in the bankruptcy case.

A debtor's ability to work with retained professionals on a consistent and productive basis is one indicator of successful management of the Chapter 11 reorganization process. Here, the record shows by clear and convincing evidence that the Debtor has not been able to sustain a productive relationship with retained counsel that has permitted her to move this case forward toward the proposal and confirmation of a plan of reorganization.

No less than five counsel were proposed or retained by the Debtor in the first five months of this bankruptcy case. The estate's first counsel, Rachel Blumenfeld, Esq., filed a notice of appearance on July 14, 2008, and a retention application on July 16, 2008. Less than two weeks later, on July 25, 2008, Joel Shafferman, Esq., filed a motion to substitute as counsel, which was granted by Order dated August 4, 2008. Just over two weeks later, on August 13, 2008, Craig Heller, Esq., filed a motion to substitute as counsel for Mr. Shafferman, but before this motion was decided, on October 30, 2008, Erica Itzhak, Esq., appeared as the estate's fourth proposed counsel. And some two weeks after that, on November 12, 2008, Joseph Maniscalco, Esq., filed a

retention application, and then withdrew it by letter dated November 20, 2008.

On December 18, 2008, Dennis Houdek, Esq., filed an application to be retained as counsel for the estate. The Court approved his retention as the sixth proposed or retained counsel for the Debtor and debtor-in-possession by Order dated January 30, 2009, and Mr. Houdek represented her estate for nearly a full year. But in that period, the estate's unpaid administrative expenses grew significantly, and the Debtor did not make any significant progress towards proposing or confirming a plan of reorganization.

During the January 4, 2010, hearing, the Debtor in open court terminated Mr. Houdek as counsel for the estate, and identified another attorney present at the hearing as proposed substitute counsel. That attorney withdrew his retention application on January 19, 2010. And on February 23, 2010, David Carlebach, Esq., filed a retention application and appeared as the eighth proposed incoming counsel to the Debtor during the February 25, 2010, hearing. His retention application has drawn opposition, and remains pending.

A debtor's ability to meet her administrative obligations, including the regular payment of the administrative expenses of a case, is also a factor to be considered in deciding whether a trustee should be appointed. Here, the record shows by clear and convincing evidence that under the Debtor's management, the estate is accumulating unpaid administrative expenses at a monthly rate of more than $11,000. Mortgage balances on the Titled Properties are increasing, and real estate taxes and utilities remain unpaid. Equally important, in the twenty-one months that this bankruptcy case has been pending, the Debtor has not made any significant progress towards proposing and confirming a Chapter 11 plan that will resolve her creditors' claims and pay her estate's administrative expenses.

An additional factor to be considered in determining whether to appoint a trustee is the debtor's ability to manage the bankruptcy process and all of the relationships with parties in interest in a productive manner, free to the extent possible from avoidable and unproductive conflict and acrimony.  Here, the record shows by clear and convincing evidence that the Debtor has not been successful in navigating the Chapter 11 process in a productive way.  The Debtor's relationships with many of her creditors, tenants, and other parties in interest are contentious, acrimonious, and unproductive.  Neither regular status conferences with the Court, nor any of the counsel proposed or retained by the Debtor, nor the Court-appointed mediator, has been able to assist the Debtor in reducing the level of acrimony that underlies these relationships.  This has led to costly, protracted, and burdensome litigation in this Court and in state court.  The acrimony and conflicts between the Debtor and her creditors and parties in interest extend well beyond the "healthy conflicts that always exist between debtor and creditor[.]"  *Marvel*, 140 at 472-73.  And plainly, "that acrimony is hampering the prospects of rehabilitation."  *Chapter 11 Trustees*, *supra*, at 301.

Moreover, in her capacity as debtor-in-possession, the Debtor is weighed down by conflicting roles and conflicts of interest.  As debtor-in-possession, the Debtor owes fiduciary duties to her creditors and the estate.  At the same time, she is Mr. Taub's and Moshe Taub's landlord, and she is engaged in litigation as both plaintiff and defendant in state court involving Mr. Taub and Moshe Taub.  And it is clear that some of the Debtor's most active creditors lack confidence in her ability to manage the case and propose a confirmable plan.

A further factor to be considered in deciding whether the appointment of a trustee is warranted is the benefit to be derived by the estate from the appointment of a trustee, balanced

against the costs of appointment.  Here, the record shows by clear and convincing evidence that this balance tips in favor of directing the appointment of a trustee.

The costs of appointing a trustee in this case are clear.  A trustee will need to become familiar with the record and facts of the case, and to assess both the opportunities and the obstacles to the formulation of a Chapter 11 plan.  He or she will need to retain counsel and may require the services of other professionals.  A trustee will also be required to investigate the status of the Titled Properties and other property of the estate.  And a trustee will need to report to the Court on the status of the case and the prospects for reorganization.  These tasks will require time and expense, and the costs of administration of this bankruptcy case, already significant, will inevitably increase.

But the benefits of the appointment of a trustee are also clear.  At the outset, a trustee can stand in the Debtor's shoes and survey the estate free from the complex, familial, reflexive, and often acrimonious relationships among the Debtor and the parties in interest who have been most active in the bankruptcy case, including Ms. Newhouse, Mr. Taub, and Ms. Kaufman.

In addition, a trustee can manage the estate's property without the constraints that result from the contentious litigation pending in this Court and elsewhere.  A trustee can fulfil the Debtor's fiduciary obligations to the estate and its creditors without any prospect of favoritism or animus. *Smart World,* 423 F.3d at 175 (concluding that debtor-in-possession's "duty to wisely manage the estate's legal claims is implicit in the debtor's role as the estate's only fiduciary").  That is, a trustee will not be affected by conflicts of interest and the long litigation history among many of the parties, and can manage the assets, including the Titled Properties, evaluate the claims, and otherwise perform the duties of a debtor-in-possession with the objective of

preserving the value of the estate.

A trustee may also be necessary to "unfreeze this bankruptcy case and . . . permit and foster the negotiations between interested parties which generally occurs in bankruptcy cases." *In re Bellevue Place Assocs.*, 171 B.R. 615, 625 (Bankr. N.D. Ill. 1994). And "[a] trustee [will] be able to put some order into the Debtor's business affairs and provide some answers regarding income and expenses . . . ." *In re Wings Digital Corp.*, 2005 WL 3789334, at *6 (Bankr. S.D.N.Y. May 16, 2005).

And finally, a trustee can make an objective assessment of "the merits of the case" and the "paramount interests of creditors . . . ." *Eurospark,* 2010 WL 779551, at *8 (internal quotation omitted). Based on this assessment, he or she can determine and report promptly to this Court whether there is a reasonable prospect that the Debtor's estate can be reorganized under Chapter 11, or, alternatively, if the continuation of this proceeding is simply a costly administrative exercise in perpetuation of the Debtor's "terminal euphoria." *In re Island Helicopters, Inc.*, 211 B.R. 453, 466 (Bankr. E.D.N.Y. 1997).

Based on the entire record, the Court is satisfied that the record warrants the entry of an order directing the appointment of a trustee under 11 U.S.C. § 1104(a)(2) to perform the duties set forth in 11 U.S.C. § 1106(a), including the operation of the Debtor's business.

### *The Appointment of a Trustee Under Section 1104(a)(3)*

Section 1104(a)(3), which was enacted in 2005, permits the Court to appoint a trustee to replace the debtor-in-possession as an alternative to converting or dismissing the case, where the requirements of Section 1112(b) are satisfied but the appointment of a trustee would be in the "best interests" of creditors and the estate. 11 U.S.C. § 1104(a)(3). As applied here, Section

1104(a)(3)'s "best interests" standard is not meaningfully different from the standard under Section 1104(a)(2).

This section is, in effect, an exception to the mandate of Section 1112(b), as amended in 2005, that the court "shall" convert a Chapter 11 case to one under Chapter 7, or dismiss the case, if a movant establishes "cause." If cause is not established under Section 1112(b), then the prospect of the appointment of a trustee under Section 1104(a)(3) does not arise. *In re Univ. Heights Ass'n*, 2007 WL 316281, at *3 (Bankr. N.D.N.Y. Jan. 22, 2007) ("As the court did not find grounds exist to dismiss the case under § 1112, appointment of a trustee under § 1104(a)(3) is not warranted.").[10]

Section 1112(b) sets forth the standards for the conversion or dismissal of a Chapter 11 case. Section 1112(b)(4) sets forth a non-exclusive list of what constitutes "cause" to convert or dismiss a case. "[A] motion to dismiss under section 1112(b) . . . requires a showing of cause by a preponderance of the evidence . . . ." *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 170 (Bankr. S.D.N.Y. 2004). Section 1112(b)(4)(A) provides that cause to convert or dismiss a case may include "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[.]" 11 U.S.C. § 1112(b)(4)(A).

One indication of continuing loss to the bankruptcy estate is negative cash flow after the bankruptcy case is commenced. *See, e.g., In re 3868-70 White Plains Road, Inc.*, 28 B.R. 515,

---

[10]   Another exception is contained in Section 1112(b)(1), which provides that a court may use its discretion not to convert or dismiss a case if "unusual circumstances" indicate that it is not in the best interests of creditors and the estate to do so. 11 U.S.C. § 1112(b)(1). *See In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) (noting that Section 1112(b)(1) "explicitly provides for [judicial] discretion" in determining whether to convert or dismiss a case once cause is found).

518 (Bankr. S.D.N.Y. 1983) (finding estate suffered continuous loss where "[t]he debtor has been

unable to make any payments to its first mortgagee during the [six-month] pendency of this

case"). Another indicator is the debtor's inability to meet the basic operating expenses critical to

the viability of its enterprise, notwithstanding the protection of the automatic stay. *In re Schriock

Constr., Inc.*, 167 B.R. 569, 575-76 (Bankr. D. N.D. 1994). It is not necessary that the losses to

the estate be large. "All that need be found is that the estate is suffering some diminution in

value." *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988).

In determining whether rehabilitation of a debtor's estate is reasonably likely, courts

consider whether the debtor's financial affairs are likely "[to] be reestablished on a firm, sound

basis." *In re D & F Meat Corp.*, 68 B.R. 39, 41 (Bankr. S.D.N.Y. 1986). As one court observed,

the question is whether it is reasonably likely that the Debtor can "stop the bleeding . . . ." *In re

Strawbridge*, 2010 WL 779267, at *4 (Bankr. S.D.N.Y. Mar. 5, 2010). "Without a reasonable

amount of assets and a feasibly operating business there is no logic in continuing a Chapter 11

[case]." *In re 312 W. 91st Street Co.*, 35 B.R. 346, 347 (Bankr. S.D.N.Y. 1983). The debtor's

"boundless confidence" that reorganization will be successful is not a sufficient basis on which to

conclude that rehabilitation is possible. *Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana

Queen Motel, Inc.)*, 749 F.2d 146, 151 (2d Cir. 1984). Neither is the prospect that a potentially

meritorious litigation will bring funds into the estate. *In re FRGR Managing Member LLC*, 419

B.R. 576, 583-84 (Bankr. S.D.N.Y. 2009).

Here, the record shows by a preponderance of the evidence that the Debtor's estate has

suffered a continuing loss or diminution during the period that this bankruptcy case has been

pending. The estate has reported negative cash flow since this case began, and the unpaid

34

administrative expenses, including the expenses for the Titled Properties, continue to grow at a rate of more than $11,000 per month.  In addition, Court-ordered fees due to the mediator and Court-approved fees due to the estate's recently discharged counsel amount to more than $320,000, and the unsecured claim of Ms. Newhouse now totals more than $588,000.

The record also shows by a preponderance of the evidence that there is not a reasonable likelihood of rehabilitation under the Debtor's management.  Over the twenty-one months that this bankruptcy case has been pending, the Debtor has not proposed a plan of reorganization or made significant progress towards the resolution of many of the most basic issues concerning the administration of this case.  While the Debtor asserts that she can sustain a confirmable Chapter 11 plan of reorganization on the basis of the rental income generated by the Titled Properties, her management of those properties has been marked by costly and burdensome litigation and disputes in this Court and elsewhere, and she has been unable to resolve disputes in an efficient or productive way.  And these problems have not diminished as the bankruptcy case has progressed.

The record further shows by clear and convincing evidence that the appointment of a trustee is in the best interests of creditors and the estate.  From the outset of this bankruptcy case, the Debtor has not managed the considerable assets of this estate in a productive manner.  The Debtor attributes her difficulties in managing these assets to the interference of Mr. Taub and others, and Mr. Taub attributes those difficulties to the Debtor.  But whatever the reason, it is evident from the record that this bankruptcy case presents the kind of "unusual circumstances" that signal the need for a disinterested person to undertake the management of the business of the Debtor.

A trustee can evaluate and operate the Debtor's business in an objective and neutral

manner, with an eye to determining whether reorganization is reasonably in prospect. He or she can assume control of the property of the estate and act on behalf of the bankruptcy estate. *Official Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 285 B.R. 148, 157 (Bankr. D. Del. 2002). He or she can "examine the various causes of action that [the Debtor] believes she has against the creditors in this case and determine whether they are worth further pursuit." *Strawbridge*, 2010 WL 779267, at *5. Significantly, a trustee will "determine whether or not the debtor can be reorganized and along which lines such reorganization . . . should proceed." *In re Cohoes Indus. Terminal, Inc.*, 65 B.R. 918 (Bankr. S.D.N.Y. 1986). And finally, a trustee can report to the Court if he or she determines that this bankruptcy case cannot be reorganized effectively under Chapter 11, and seek consideration of conversion to liquidation under Chapter 7, or dismissal.

Based on the entire record, the Court is satisfied that the record warrants the entry of an order directing the appointment of a trustee under 11 U.S.C. § 1104(a)(3) to perform the duties set forth in 11 U.S.C. § 1106(a), including the operation of the Debtor's business.

## Conclusion

For the reasons stated herein, and based upon the entire record, the Motion to Restrain is granted to the extent that Mr. Taub and his agents are directed not to interfere with the management of property of the estate; to turn over and account to the Debtor's estate for any rent that he has collected from the Titled Properties; to account for and pay to the Debtor's estate the fair market rent due for his occupancy of an apartment at the 14th Avenue Property; and to pay monthly rent to the Debtor's estate for so long as he occupies the apartment in the 14th Avenue Property.

The Motion to Compel is granted to the extent that the Debtor's estate is directed to pay the actual and necessary costs and expenses of preserving and maintaining the 52nd Street Property.

The OSC is granted to the extent that the United States Trustee is directed to appoint a trustee under Bankruptcy Code Sections 1104(a)(2) and 1104(a)(3) to perform the duties set forth in 11 U.S.C. § 1106(a), including the operation of the Debtor's business.

All other requests for relief are denied.  The Court will enter  appropriate orders simultaneously herewith.

Dated: Brooklyn, New York
  April **9**, 2010

        *s/ Elizabeth S. Stong*     
        HONORABLE ELIZABETH S. STONG
        UNITED STATES BANKRUPTCY JUDGE